**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALI MATTHEW SHEIKHBAHAEI,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 24-793 (JEB)** |
| **DEPARTMENT OF STATE, *et al.*,** | |
| **Defendants.** | |

**<u>MEMORANDUM OPINION</u>**

*Pro se* Plaintiff Ali Matthew Sheikhbahaei, a U.S. citizen, seeks a visa for his father, Reza Sheikhbahaei, an Iranian citizen.  (The Court refers to Plaintiff and his father by their first names throughout this Opinion to avoid confusion and not out of any disrespect.)  Reza began the I-130 visa-application process in August 2022, and he interviewed at the U.S. Embassy in Abu Dhabi in October 2023.  Since that interview, Ali alleges that his father's application has been unreasonably delayed by administrative processing.  Plaintiff thus brings this suit to secure Reza's visa, naming the State Department, the U.S. Embassy in Abu Dhabi, Antony Blinken, and Sean Murphy (*Chargé d'Affaires* at the Embassy) as Defendants.  He alleges that the delay violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*., and his Fifth Amendment due-process rights.  Additionally, Ali contends that Reza's application has been improperly singled out for slower processing under the Department of Homeland Security's Controlled Application Review and Resolution Program (CARRP).

1

Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Just as it has held in repeated other cases, the Court here finds that the processing delay is reasonable.  It will thus grant the Motion.

## I.    Background

The Court will provide a brief overview of the process for obtaining an I-130 visa before turning to the specifics of this case.

### A. I-130 Visas

For U.S. citizens seeking to bring their foreign relatives to this country, the Immigration and Nationality Act requires that they begin the process by filing a Form I-130 petition with the United States Customs and Immigration Service, a DHS component.  See 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1), (b).  If the petition is approved, the foreign national must then go to his local U.S. consulate to complete visa processing, which includes submitting an online Immigrant Visa and Alien Registration Application as well as appearing for an interview with a consular officer.  See 22 C.F.R. § 42.67(a)(3).

After the interview, the officer must either issue the visa or refuse it.  See id. § 42.81(a). If the latter, she "must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available."  9 Foreign Affairs Manual § 504.1-3(g).  Throughout the process, the foreign national bears the burden of establishing that he "is not inadmissible" and "that he is entitled to the . . . status claimed."  8 U.S.C. § 1361.  In cases where the officer requires additional information to determine the applicant's eligibility, however, she may refuse the visa pending further "administrative processing."  U.S. Dep't of State, Administrative Processing Information, https://bit.ly/2GO3jEg [https://perma.cc/NK8K-9U8H].  The status of each application is published on the State

Department's website.  See U.S. Dep't of State, Visa Status Check, http://tinyurl.com/52px458z [https://perma.cc/SBV4-AT2N].

    B. Factual History

    The Court, as it must in a case brought by a *pro se* plaintiff, draws on the facts as pled in both the Complaint and Plaintiff's Opposition to Defendants' Motion to Dismiss, taking them to be true.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113–14 (D.C. Cir. 2000); Brown v. Whole Foods Market Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (courts should consider "the facts alleged in all of [a *pro se* plaintiff's] pleadings" when evaluating motion to dismiss).

    Reza is an Iranian citizen who struggles with health complications arising from heart disease, type-II diabetes, and a chronic lung condition.  See ECF No. 1 (Compl.) ¶¶ 2, 20; ECF No. 11 (Opp.) at 8, 25.  He received a green card in 1976 but has lived in Iran since 1979.  See Opp. at 7.  Seeking to come back to the U.S. to receive treatment for his health conditions, Reza — aided by Ali — applied for an I-130 visa in August 2022.  See Compl., ¶¶ 10, 13, 15, 20; ECF No. 13 (Reply) at 7.  (Plaintiff alleges that his father's green card is unexpired but does not plausibly explain why Reza would now need a visa if that were indeed the case.  See Opp. at 7– 8.)  The petition was approved by USCIS and sent to the U.S. Embassy in Abu Dhabi, where Reza was called for an interview on October 16, 2023.  See Compl., ¶¶ 16–17.  Following the interview, he was refused a visa pending further administrative processing, which a consular officer advised him should take no more than 60 days.  Id., ¶ 18.

    After Reza waited in vain for five months to receive a decision on his petition, Ali filed this suit to force the Government to act.  Plaintiff claims that Defendants' delay in processing

Reza's visa application violates both the APA and Ali's constitutional rights.  Id. at 1, 5–8.  He asks the Court to order the Government to issue the visa forthwith.  Id. at 8–9.

## II.   Legal Standard

The Government moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence."  Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 173 (D.D.C. 2020)); see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  The court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  While a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.

### III.   Analysis

The Court looks at each of Ali's three counts in turn, beginning with the APA, moving to due process, and finishing with CARRP.

### A.   APA

#### 1.   *Preliminary Issues*

Although the main dispute here relates to unreasonable delay, the Government throws up some preliminary procedural hurdles.  It maintains that the delay issue is unreviewable given the doctrine of consular non-reviewability and the lack of a clear, non-discretionary duty requiring a consular officer to adjudicate visa applications.  See ECF No. 8 (MTD) at 5–15.  As the Court has rejected these gambits before, it does so here in short order.

Consular non-reviewability "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise."  Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021).  In Zandieh v. Pompeo, 2020 WL 4346915 (D.D.C. July 29, 2020), and Khazaei v. Blinken, 2023 WL 6065095 (D.D.C. Sept. 18, 2023), the Court determined that when USCIS refused the plaintiffs' visas pending further processing, the applications were still under consideration and decisions on them were not final.  The consular non-reviewability doctrine thus did not apply.  As the Court adopts its reasoning in those cases here, the doctrine is similarly inapplicable.

Defendants next point out that any unreasonable-delay claims "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  MTD at 10 (quoting Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004)).  The Government contends that such is not the case here.  In Khazaei, this Court disagreed with a similar argument, finding that "refusing a visa to an applicant who has been interviewed is

5

clearly a discrete agency action . . . required by both the APA and the [State] Department's own regulation[s]."  2023 WL 6065095, at *5–6; see also Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to United States v. Pompeo, 2019 WL 367841, at *10–11 (D.D.C. Jan. 30, 2019) (finding duty to act).  Consistent with this holding, Ali's APA claims can proceed.

### 2. *Unreasonable Delay*

Moving to the merits, the APA requires an agency to "conclude a matter presented" to it "within a reasonable time."  5 U.S.C. § 555(b).  When an agency fails to do so, a court must "compel agency action unlawfully withheld or unreasonably delayed."  Id. § 706(1); see also Bagherian, 442 F. Supp. 3d at 93.

To assess whether this delay is unreasonable, the Court turns to the familiar six-factor inquiry outlined in Telecommunications Research & Action Center v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) (TRAC):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020) (quoting TRAC, 750 F.2d at 80); see also Sarlak v. Pompeo, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (applying TRAC factors at motion-to-dismiss stage and collecting cases).  These factors "are not 'ironclad,' but

rather are intended to provide 'useful guidance in assessing claims of agency delay.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750 F.2d at 80).

The first two factors, which courts generally consider together, favor the Government. The parties agree that "no specific statutory or regulatory timeframe exists" by which the Government must "re-adjudicat[e] visa applications." See Opp. at 22; see also MTD at 19. The Court thus turns to caselaw for guidance in the absence of a "congressionally supplied yardstick." Sarlak, 2020 WL 3082018, at *6. While district courts have not established a bright-line rule, they "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Id. (alteration omitted) (quoting Yavari v. Pompeo, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)); see also Ghadami v. Dep't of Homeland Sec., 2020 WL 1308376, at *8 (D.D.C. March 19, 2020) (finding two-year delay reasonable); Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (noting two-year delay "does not typically require judicial intervention"); Schwartz v. U.S. Dep't of Homeland Sec., 2021 WL 4133618, at *3 (D.D.C. Sept. 10, 2021) (holding 19-month delay reasonable).

Reza's application has only been in processing for one year, which is significantly less time than other delays that courts have held to be reasonable. Ali nevertheless contends that Defendants should have made a decision within 60 days, as promised, especially because Reza is a green-card holder and has severe medical needs. See Opp. at 20–23. He provides no law, however, to support the idea that one's green-card status or medical condition requires Defendants to prioritize him in the visa-adjudication process.

TRAC factors three and five — whether health and welfare are at stake and the nature of the interests prejudiced by the delay — favor Plaintiff. Reza has serious health complications

arising from his heart disease, type-II diabetes, and chronic lung condition.  See Compl., ¶ 20;
Opp. at 25.  He is now "separated from his family and living alone" while his health worsens for
lack of adequate care.  See Opp. at 20.  A medical team in the U.S. has developed a plan to treat
him, however, so his condition could improve if he were granted a visa.  Id.  Defendants counter
that these factors should tip toward them, as "Plaintiff's position is not unique" and prioritizing
his father's application would be unfair to other applicants.  See MTD at 23.  But they do not
stop there.  The Government goes so far as to argue that the harms Reza has experienced are not
the "type of harms that could make the . . . factors plausibly tilt in Plaintiff's favor," which are
instead conditions such as lacking access to electricity, water, food, or shelter.  Id. at 24 (citing
Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 345 (D.C. Cir. 2023)).  Our Circuit in Da
Costa, however, merely stated that lacking access to those amenities is an example of a claim
that would favor a plaintiff but did not hold that comparable deprivation is a prerequisite to
prevail on this factor.  See 80 F.4th at 345; see also Mukkavilli v. Jaddou, 2024 WL 1231346, at
*2 (D.C. Cir. Mar. 22, 2024) (holding factors three and five favored plaintiff when delay made
him "unable to visit his parents or his in laws" and "exacerbate[d]" his wife's "debilitating
migraines") (citation omitted).  As Reza is a 76-year-old man who is suffering from significant
health ailments that could be treated by the U.S. healthcare system, the Court finds that he
prevails on these factors.

　　　　Factor four — which requires the Court to "consider the effect of expediting delayed
action on agency activities of a higher or competing priority" — favors Defendants.  TRAC, 750
F.2d at 80.  This factor weighs heavily in the TRAC analysis, and "where a judicial order putting
the petitioner at the head of the queue would simply move all others back one space and produce
no net gain," the D.C. Circuit has found intervention unwarranted — even when all the other

TRAC factors pointed towards relief.  See Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (alterations omitted) (quoting In re Barr Labs., Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)).  Because USCIS adjudicates visa applications based on the date that they were filed, see 8 U.S.C. § 1153(e), judicial intervention would create just that scenario here.

Ali maintains that his father "does not seek to leapfrog over others without justification," but rather to receive the proper prioritization of someone who holds a valid Alien Registration status and unexpired green card.  See Opp. at 24.  He yet again, however, does not point to law that would support this prioritization for people in Reza's position.  Plaintiff's argument also assumes that there are no other visa applicants in similar situations who have been waiting longer for administrative processing or whom the Government has otherwise deemed a higher priority than Reza.  "Processing capacity is presently a zero-sum game[;] granting plaintiffs' request to expedite would necessarily mean additional delays for other [similarly situated] applicants — many of whom undoubtedly face hardships of their own."  Murway v. Blinken, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (citations and internal quotations omitted); see also Tate v. Pompeo, 513 F. Supp. 3d 132, 150 (D.D.C. Jan. 16, 2021) ("While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities.").

The sixth and final TRAC factor — impropriety on behalf of the agency — also favors the Government.  The Court "must determine whether the agency has acted in bad faith in delaying the action."  Gona v. U.S. Citizenship & Immigr. Servs., 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021).  In his Opposition, Ali asserts that Defendants intentionally changed their website "to support their erroneous interpretation that refusals under § 221(g) constitute

final decisions," understaffed the visa-adjudication team, and contradictorily argued both that they have no duty to adjudicate visa applications and that they are actively processing Reza's application.  See Opp. at 27.  Yet these conclusory statements regarding the website and staffing do not support a finding of impropriety.  See Da Costa, 80 F.4th at 346 (finding "conclusory and implausible" allegations insufficient to prove agency's bad faith).  It is not contradictory, furthermore, to pursue an action and simultaneously argue that such action is not required.

On balance, the Court concludes that Plaintiff has not stated an unreasonable-delay claim under the APA.  See Sarlak, 2020 WL 3082018, at *6 (collecting cases reaching same conclusion).  This does not minimize the pain that Reza has endured while waiting for his visa to process — though such acknowledgement is likely small comfort.

B. Constitutional Claims

Plaintiff next asserts that the Government's delay in adjudicating Reza's application also violates Ali's due-process rights under the Fifth Amendment.  See Compl., ¶¶ 37–40.  A necessary component of this claim is that there is a "liberty or property interest of which plaintiff has been deprived."  Ghadami, 2020 WL 1308376, at *10 (quoting Swarthout v. Cooke, 562 U.S. 216, 219 (2011)).  In moving to dismiss, the Government contends that the Supreme Court has rejected both procedural and substantive due-process claims as they relate to such immigration proceedings.  See MTD at 25–26 (citing United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544 (1950), and Kerry v. Din, 576 U.S. 86, 88 (2015)).  Specifically, Defendants argue that there is no fundamental liberty interest violated by the denial of a spouse's visa application — perhaps seeking to imply that the Court should apply the same logic to the denial of a parent's visa petition.  See id. ("[T]he Court held that 'a long practice of regulating spousal immigration precludes [the U.S. citizen's] claim that the denial of [her non-citizen husband's] visa application

has deprived her of a fundamental liberty interest.'") (quoting <u>Kerry</u>, 576 U.S. at 95).  Ali does not respond to this position in his Opposition.

In evaluating this issue, the Court will rely on its reasoning in <u>Ghadami</u>, since that case implicates the parent-child relationship.  There, it followed the Circuit in holding that it "does not recognize a relationship protected under the due process clause where the child is an independent adult."  2020 WL 1308376, at *11 (citing <u>Butera v. District of Columbia</u>, 235 F.3d 637, 656 (D.C. Cir. 2001)); <u>see also</u> <u>Al-Aulaqi v. Obama</u>, 727 F. Supp. 2d 1, 26 (D.D.C. 2010) (holding plaintiff had no constitutionally protected interest in maintaining relationship with adult child).  The Court therefore finds that Ali does not have a liberty interest in his father's visa status, meaning that this claim fails.

C.  <u>CARRP</u>

In a final effort to fast-track Reza's visa, Ali contends that CARRP is an internal DHS policy that Defendants use to "intentionally delay[] the applications of applicants . . . due to perceived security concerns," which include simply "being from a predominantly Muslim country."  Compl., ¶¶ 27–28.  He continues that CARRP's definition of security concern is far more capacious than Congress ever intended when passing the INA, and it "casts a net so wide that it brands innocent, law-abiding residents, like Reza . . . as national security concerns on account of innocuous activity and associations, and characteristics such as national origin."  <u>Id.</u>, ¶ 31 (quotations omitted).  It is unclear what kind of cause of action such an allegation constitutes.  Regardless, Defendants point out that CARRP is a DHS policy that does not implicate the State Department.  <u>See</u> MTD at 27–28.  Yet again, Plaintiff never addresses CARRP in his Opposition.

Even if this policy provided a basis for suit, the Government is correct that DHS is simply not the agency delaying visa adjudication here; that is the State Department.  The best connection Ali can allege between DHS and State is that the latter "regularly works with . . . DHS when carrying out background and security investigations that are delayed by administrative processing."  Compl., ¶ 26.  Yet that allegation is far too vague for the claim to survive dismissal.  See Iqbal, 556 U.S. at 678; Arab v. Blinken, 600 F. Supp. 3d 59, 67–68 (D.D.C. 2022) (dismissing similar CARRP claim for lack of factual support); Ghadami, 2020 WL 1308376, at *6 (dismissing similar CARRP claim when plaintiff's allegation was "on information and belief" and did not "set forth any factual allegations to support . . . conclu[ding]" it applied to them).  Plaintiff's independent claim under CARRP thus cannot proceed.

## IV.   Conclusion

For the reasons stated above, the Court will grant Defendants' Motion to Dismiss.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date:  October 15, 2024